IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDRE P. TOWNSEND, #189415,<br>Plaintiff,<br>v.<br>ANTHONY PADULA, WARDEN, AND MARGARET BELL, ASSOCIATE WARDEN,<br>Defendants.

Civil Action No. 0:04-21879-RBH-BM

**REPORT AND RECOMMENDATION**

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections, alleges violations of his constitutional rights.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on June 21, 2005. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on June 22, 2005, advising Plaintiff of the importance of a motion for summary judgment and of the necessity for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter filed an affidavit in opposition to the Defendants' motion on July 13, 2005. Defendants' motion is now before the Court for disposition.[1]

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



**Background and Evidence**

Plaintiff alleges in his verified Complaint[2] that he is confined at the Lee Correctional Institution (LCI), where the Defendant Padula is the Warden. The Defendant Bell is alleged to be the Associate Warden. Plaintiff alleges that on June 15, 2004 he was sent to the "close custody unit" from the general population, and that "after several days of being confined to 24 hours with another room-mate, Plaintiff then filed an administrative grievance concerning outside recreation, denial of access to the courts and discrimination." On or about June 21, 2004, Plaintiff wrote to the Defendants requesting that the close custody unit be allowed to eat in the cafeteria at lunch because the close custody units at the Perry and Evans Correctional Institutions were allowed to do so pursuant to policy, and because the female close custody units also ate their meals in the cafeteria. Plaintiff also complains that close custody inmates were only allowed to use the law library if they had a pending court deadline, and that this policy violated his right of access to the courts. Finally, Plaintiff complains that during the approximately five weeks he was housed in the close custody unit he was not allowed any outside recreation or activities. Plaintiff claims that he filed a Step 1 grievance concerning his complaints, but that "the Defendants violated their policy by not responding within 40 days of receiving my grievance." Plaintiff seeks monetary damages for violations of his constitutional rights. See generally, Verified Complaint.

In support of summary judgment in the case, the Defendant Bell has submitted an affidavit wherein she attests that she is the Associate Warden at LCI. Bell attests that the unit in

---

[2]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.





which Plaintiff was housed during the times mentioned in his Complaint was on lock-down due to the fact that this particular unit had experienced a major disturbance that resulted in hostages being taken. Bell attests that in order to manage that situation the unit was put on lock-down.

Bell attests that because the unit was placed on lock-down it became a logistical issue as far as allowing inmates the use of the law library. Bell attests that in order to prioritize the law library use, a memorandum was generated (a copy of which is attached to Bell's affidavit) giving guidelines in order to manage the situation. Bell further attests that during the lock-down all outside recreation had to be suspended, and inmates were instead provided with information concerning in-cell recreation, which is allowed as an alternative to outside recreation. Bell attests that at no time did she knowingly act to violate any constitutional rights of the Plaintiff. See generally, Bell Affidavit, with Attached Exhibit.[3]

In opposition to the Defendants' motion for summary judgment, Plaintiff has submitted an "affidavit" in which he attests generally to the problems he encountered in trying to grieve this matter through the prison's grievance system. Plaintiff has also provided a copy of what he contends is the Department's close custody policy (Exhibit A), a copy of a letter he wrote to the Defendant Bell on June 29, 2004 complaining about his treatment (Exhibit F), and Bell's response to his complaint (Exhibit G). Plaintiff has also submitted an affidavit from inmate Justin Green (Exhibit K) who attests that while in close custody he did not receive "mandatory education as a youth between the ages of 17 - 21 years old," as well as affidavits from five other inmates concerning privileges they contend they were denied while in close custody. See Exhibit Q. Copies

---

[3]In addition to a copy of the memorandum referred to by Bell in her affidavit (Exhibit B), Defendants have also submitted copies of log sheets reflecting the times and nature of Plaintiff's access to the law library as Exhibit C.





of additional correspondence from the Plaintiff concerning his inability to grieve his disputes are also provided. See generally, Exhibits N, O, & P.

**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

After careful consideration of the arguments and evidence submitted, the undersigned finds and concludes that the Defendants are entitled to summary judgment in this case.[4] During the

---

[4]Defendants assert in their motion, inter alia, that this action should be dismissed because the Plaintiff has failed to exhaust his administrative remedies. However, Plaintiff specifically attests in his affidavit that he attempted to exhaust his administrative remedies, but that his grievances were either not timely processed or were not processed at all. See also, Plaintiff's Exhibits B, C, D, & E. Defendants have provided no evidence to dispute Plaintiff's affidavit or exhibits, and the undersigned has therefore discussed Plaintiff's claims hereinabove on the merits. See Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 683 (4th Cir. 2005) [inmate's failure to exhaust administrative remedies is an affirmative defense to be pled and proven by the defendant]; see also Gans v. Gray, 612 F.Supp. 608, 619 (E.D.Pa. 1985) [mere statements made in counsel's briefs





time period set forth in the Complaint, Plaintiff was an inmate in a state correctional facility, not a hotel. It should be expected that conditions in such a setting are oftentimes less than ideal. Lunsford v. Bennett, 17 F.3d 1574, 1581 (7th Cir. 1994); Hadley v. Peters, No. 94-1207, 1995 WL 675990 *8 (7th Cir. 1995), cert. denied, 116 S.Ct. 1333 (1996) ["prisons are not required to provide and prisoners cannot expect the services of a good hotel."] (quoting Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir. 1988)). It is also clear in the caselaw that courts should afford deference to prison officials in the administration of prisons, particularly when, as here, the inmates being dealt with are inmates in administrative segregation or high security status. Davie v. Wingard, 958 F.Supp. 1244, 1249-1251 (S.D.Ohio 1997); Hughes v. Rowe, 449 U.S. 5, 20 (1980); *cf.* Torcasio v. Murray, 57 F.3d 1340, 1355 (4th Cir. 1995); cert. denied, 516 U.S. 1071 (1996); Hayes v. Marriott, 70 F.3d 1144, 1146 (10th Cir. 1995). See generally Sweet v. South Carolina Department of Corrections, 529 F.2d 854, 859 (4th Cir. 1975) (en banc) [describing federal court's deference to prison administrators and all administrative matters unless the condition rises to the level of a constitutional violation]; Jackson v. Bostick, 760 F.Supp. 524, 528 (D.Md. 1991); Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995) [Prison officials have legitimate penological interests in Administrative Segregation, and they must be given "wide-ranging deference" with respect to their need to maintain order, discipline, and "institutional security"], reh'd denied, 75 F.3d 448 (9th Cir. 1995), cert. denied, County of Kern v. Anderson, 116 S.Ct. 306 (1995).

Here, the Defendant Bell attests in her affidavit that, during the time period set forth in Plaintiff's Complaint, Plaintiff's unit was on lock-down due to a major disturbance that had resulted in hostages being taken. Plaintiff has provided no evidence to refute this characterization;

---

are not evidence for the purpose of supporting or opposing a motion for summary judgment].





rather, he simply complains about the conditions under which he was being held. However, Plaintiff's evidence does not show that the conditions of his confinement rose to the level of a constitutional violation. Slezak v. Evatt, 21 F.3d 590 (4th Cir. 1994) [the Constitution vests no liberty interest in inmates retaining or receiving any particular security or custody status as long as the conditions or degree of confinement is within the sentence imposed]; Neal v. Shimoda, 131 F.3d 818, 828 (9th Cir. 1997) ["[A] prisoner does not have a constitutional right to be housed at a particular institution,..., [or] to receive a particular security classification...."]; Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) ["[A] prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation."]; see also Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Sandin v. Conner, 515 U.S. 472 (1995) [holding that disciplinary segregation did not present the type of atypical, significant deprivation in which a state might create a liberty interest]; Beverati v. Smith, 120 F.3d 500 (4th Cir. 1997) [Inmates confinement in Administrative Segregation did not impose such an atypical hardship so as to implicate a liberty interest].

Plaintiff must realize that, by virtue of his own actions which have resulted in his imprisonment and incarceration, he has given up many of the rights and privileges enjoyed by persons in society. While Plaintiff may object to not being able to engage in recreational activities to his liking, or having restrictions placed on his ability to visit a law library or a cafeteria, Plaintiff is after all in prison, and as a prison inmate he is required to comply with reasonable prison regulations. Plaintiff's conclusory allegations as contained in his Complaint and affidavit that the general conditions of his confinement were excessive and violated his constitutional rights are not in and of themselves sufficient to maintain a constitutional claim; Papasan v. Allain, 478 U.S. 265,





286 (1986) [courts need not assume the truth of legal conclusions couched as factual allegations]; and Plaintiff has provided no evidence to show that the conditions under which he was held during the time period and under the circumstances as set forth in Bell's affidavit violated his constitutional rights. Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997) ["only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement"]; Chavis v. Fairman, No. 94-1503, 1995 WL 156599 at * 5-6 (7th Cir. Apr. 6, 1995) ["generally, even dramatic restrictions on outdoor exercise do not violate [the due process clause] so long as prisoners have ample opportunity to enjoy indoor activity"]; Wilson v. Timko, No. 91-16055, 1992 WL 185446, at **2 (9th Cir. August 5, 1992) [temporary restriction of amenities was not cruel and unusual punishment]; May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) ["a temporary denial of outdoor exercise with no medical effects is not a substantial deprivation"]; Caldwell v. Miller, 790 F.2d 589, 600 (7th Cir. 1986) [no Eighth Amendment violation even though inmates confined to cells for twenty-four hours a day for one-month period after a lockdown]; Hayward v. Procunier, 629 F.2d 599, 603 (9th Cir. 1980) [five month lockdown and deprivation of outdoor exercise in response to genuine emergency did not violate the Eighth Amendment], cert. denied, 451 U.S. 937 (1981); Farmer v. Brennen, 114 S.Ct. 1970, 1979 (1994) [noting that nothing in the evidence presented to the court showed that plaintiff was ever denied the minimal civilized measure of life's necessities, or that any defendant engaged in conduct "for the very purpose of causing harm or with the knowledge that harm [would] result"]; Alberti v. Klevenhagen, 790 F.2d 1220, 1228 (5th Cir. 1986) [Eighth Amendment does not require "the provision of every amenity needed to avoid mental, physical, or emotional deterioration."]; *cf.* Sandin, 515 U.S. 472 [holding that disciplinary segregation did not present the type of atypical,





significant deprivation in which a state might create a liberty interest].

Specifically, Plaintiff has failed to show a violation of his right to equal protection, as he has presented no evidence to show that the restrictions under which he was held were motivated by a class-based discriminatory animus. See generally, Andrews v. Fowler, 98 F.3d 1069, 1079-1080 (8th Cir. 1996); Lee-Patterson v. N.J. Transit Bus Operations, Inc., 957 F.Supp. 1391, 1403 (D.N.J. 1997); Pravda v. City of Albany, 956 F.Supp. 174, 179-181 (N.D.N.Y. 1997); Koch v. Mirza, 869 F.Supp. 1031, 1038 (W.D.N.Y. 1994). Plaintiff's claim that he was denied equal protection because inmates in close custody status at other institutions were being provided with privileges such as being allowed to eat in the cafeteria is patently without merit. Such a comparison does not establish a "suspect class" for purposes of an equal protection claim. Jones v. Ray, 279 F.3d 944, 946-947 (11th Cir. 2001) ["To establish an equal protection claim, a prisoner must establish that (1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race."]. Further, there is no evidence that the close custody units at these other institutions had experienced similar disturbances or problems such as those that led to the restrictions at Plaintiff's institution. Brown v. Zavaras, 63 F.3d 967, 970 (10th Cir. 1995) [applying a rational basis standard to the treatment of a prisoner and stating that "[w]hen the Plaintiff is not a member of a protected class and does not assert a fundamental right, we determine only whether government classifications have a rational basis."]

With regard to access to the courts, Plaintiff has provided no evidence to show that the policies at issue denied him access to the courts in general, or that he suffered any harm in any legal proceeding because of the Defendants' actions. In order to survive summary judgment on this





claim, Plaintiff must submit evidence at least sufficient to create a genuine issue of fact as to both a denial of court access *and* whether he suffered some prejudice resulting from the denial of access. See Strickler v. Waters, 989 F.2d 1375, 1382-1383 (4th Cir. 1993), cert. denied, 510 U.S. 949 (1993); Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987) ["Courts have required a showing by a complaining prisoner of actual injury or specific harm to him before a claim of lack of access to the courts will be sustained"]; Hause v. Vaught, 993 F.2d 1079, 1084-1085 (4th Cir. 1993); Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) [Dismissal of access to court claim proper where inmate relied on conclusory allegations and failed to identify any actual injury]. Given the circumstances present in this case, it is only reasonable for prison administrators to have set up a system or procedure to regulate inmate access to the prison library, and both parties in this case have provided exhibits which reflect the prison administration's efforts to work with inmates with respect to their library needs. See Defendants' Exhibit C; Plaintiff's Exhibit L. No constitutional violation is shown in this evidence.

Finally, Plaintiff places great emphasis on his argument that the restrictions under which he was held during this period of lock-down in his unit were not in accordance with prison policies regarding what privileges were to be accorded to inmates. See Plaintiff's Exhibit A. Of course, the evidence before this Court shows that the period at issue was not a normal time. In any event, Plaintiff has failed to present any evidence to show how a temporary interruption in the privileges normally provided under prison policy violated his right to equal protection under the constitution, or otherwise violated his constitutional rights. While Plaintiff may or may not have a cause of action with respect to one or more of his claims under some state law, policy or procedure, the only issue before this Court is whether Plaintiff has submitted sufficient evidence to show that





his allegations rise to the level of a *constitutional* violation. See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]. He has failed to present any such evidence, and this case should therefore also be dismissed.

**Conclusion**

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

August 25, 2005

**Notice of Right to File Objections to Magistrate Judge's Report and Recommendation**
**&**
**The Serious Consequences of a Failure to Do So**

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd. Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections. See Wright, supra,; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201



