IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Andre P. Townsend, #189415 | ) | C/A No. 0:04:21879-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | **O R D E R** |
| vs. | ) | |
| | ) | |
| Anthony Padula, Warden, and Margaret Bell, | ) | |
| Associate Warden, | ) | |
| | ) | |
| Defendants. | ) | |

The Plaintiff, *pro se*, instituted this action on August 31, 2004. Plaintiff claims violations of his civil rights pursuant to 42 U.S.C. § 1983 arising out of privileges that he was denied while in the close custody unit of Lee Correctional Institution. Specifically, the plaintiff complains that he was not allowed to eat in the cafeteria; enjoy outside recreation; and have sufficient time in the law library. In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02 D.S.C., this matter was referred to United States Magistrate Judge Bristow Marchant for pretrial handling.

On June 21, 2005, the defendants filed a motion for summary judgment. On June 22, 2005, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Magistrate Judge issued an order advising the plaintiff of the summary judgment procedure and the possible consequences if he failed to respond adequately. Plaintiff filed a response to the motion for summary judgment on July 13, 2005. The matter is before this Court on the Report and Recommendation of Magistrate Judge Marchant, which was issued on August 26, 2005. After analyzing the issues presented in this case the Magistrate

Judge recommended that this Court grant the defendants' motion for summary judgment. The plaintiff filed objections to the Report on September 12, 2005.[1]

The Magistrate Judge makes only a recommendation to the Court, to which any party may file written objections. The Court is not bound by the recommendation of the Magistrate Judge but, instead, retains responsibility for the final determination. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is required to make a *de novo* determination of those portions of the Report or specified findings or recommendation as to which an objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the Magistrate Judge as to those portions of the Report and Recommendation to which no objections are addressed. While the level of scrutiny entailed by the Court's review of the Report thus depends on whether or not objections have been filed, in either case the Court is free, after review, to accept, reject, or modify any of the Magistrate Judge's findings or recommendations. 28 U.S.C. § 636(b)(1).

**Facts**

The Court agrees with the factual and procedural background as set forth by the Magistrate Judge in his Report and Recommendation. The Court therefore adopts the Magistrate Judge's version of the facts in this case to the extent such facts are not specifically included herein.

**Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). It

---

[1] The Court notes that the objections filed by the plaintiff state that they are pages 1, 2, and 3 of six pages. However, the record before the Court contains only three pages of objections.

is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369

A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir. 1995).

## Equal Protection Claim

The plaintiff alleges in his Complaint and Affidavit in Opposition to Motion for Summary Judgment[2] that the defendants violated the equal protection guarantees of the Fourteenth Amendment. Specifically, the plaintiff contends that he was denied equal protection because inmates in close custody status at other institutions and the females in the close custody unit where he was housed were allowed to eat in the cafeteria, while he was not given this privilege. This claim has no merit.

The United States Supreme Court has long held that when a state policy is challenged under the Equal Protection Clause, unless it involves a fundamental right or a suspect class, it is presumed to be valid and will be sustained "if there is a rational relationship between the disparity of treatment and

---

[2] The Court has carefully reviewed plaintiff's objections and has not found a specific objection concerning his equal protection argument about other inmates being allowed to eat in the cafeteria. However, since plaintiff alleged the issue in his earlier pleadings, and since the plaintiff proceeds *pro se*, the Court will discuss the matter.

3

some legitimate governmental purpose". *Heller v. Doe*, 509 U.S.312, 319-20 (1993). Prisoners are not a suspect class. *See Roller v. Gunn*, 107 F.3d 227 (4th Cir. 1989), listing as suspect classes race, religion, or alienage. Plaintiff's claim regarding the privilege of dining in the cafeteria is not a fundamental right. *See Washington v. Glucksberg*, 521 U.S. 702, 719-23 (1997), discussing fundamental personal rights. Therefore, the Court must determine only whether the disparate treatment is "reasonably related to legitimate penological interests." *Shaw v. Murphy*, 532 U.S. 223, 225 (2001). If so, then the state action does not contravene the Equal Protection Clause. In this case, the defendants have asserted through the Affidavit of defendant Bell that plaintiff's unit was on lockdown during the times mentioned in the complaint "for an extended period of time due to the fact that this particular unit experienced a major disturbance that resulted in hostages being taken." Courts give deference to prison officials in attempting to maintain security in the prison. *See generally Sweet v. South Carolina Department of Corrections*, 529 F.2d 854, 859 (4th Cir. 1995).

Moreover, this Court notes that the plaintiff has presented no evidence that the female close custody unit was under a lockdown during the time in question. In addition, courts have recognized that female inmates as a class are less likely to be violent than male inmates. *See Pargo v. Elliott*, 894 F. Supp. 1243 (S.D. Iowa 1995). Furthermore, there is no evidence that the other institutions where individuals in close custody had eaten meals in the cafeteria had experienced prison disturbances similar to those which took place at the unit in the instant case. Thus, plaintiff's conclusory allegations that the defendants violated the Equal Protection Clause are insufficient to survive summary judgment. For the above reasons, the Court finds the plaintiff's position on this issue is without merit.

**Cruel and Unusual Punishment**

Plaintiff objects to the Magistrate Judge's recommendation of a finding that the confinement in the close custody unit without outside recreation for about five weeks did not amount to cruel and unusual punishment. "The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Prison officials are responsible for ensuring "that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A prisoner must show that he was exposed to a substantial risk of serious harm and that the defendants acted with deliberate indifference or recklessness in order to state a claim of cruel and unusual punishment. *Id.* at 828. The Supreme Court has adopted an objective test for deliberate indifference: "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

The parties agree that on June 15, 2004 the plaintiff was transferred to the inside close custody unit.[3] Plaintiff alleges that the unit was put on lock-down on or about October 29, 2003 and that the general sanctions for his area which were imposed as a result of the lock-down were removed in May of 2004. However, he also submits a memo dated August 5, 2004 to plaintiff from defendant Margaret J. Bell, Associate Warden, which stated that negative side inmates "are not allowed outside recreation"

---

[3]Plaintiff apparently stayed in that unit until January, 2005.

but allowing in-cell recreation.[4]   The Court finds that, even if the conditions supporting the lockdown had passed at the time the defendant was denied outside recreation, he has not proven a violation by the defendants of the Eighteenth Amendment.  *See Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997), holding that "only extreme deprivations are adequate to satisfy the objective component of an Eighth amendment claim regarding conditions of confinement"; *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997), finding that "a temporary denial of outdoor exercise with no medical effects is not a substantial deprivation."  Plaintiff has not proved any medical effects from his lack of outdoor exercise in this case, and he apparently was denied this privilege for only five weeks, while in a close custody unit with disciplinary violations.  Therefore, the Court finds the plaintiff's objections in this regard to be without merit and they are overruled.

## Right of Access to Courts

Plaintiff appears to state in his objections that he was denied sufficient access to the jail law library; he alleges that access by prisoners to the law library at least once a week is required under federal and state law and state policy.  Defendants submitted evidence that, during the lockdown, allowing inmates the use of the law library became "a logistical issue".  A memo was circulated stating that inmates with upcoming court cases would be escorted to the library on Fridays from 8:00 a.m. until 11:45 a.m.  The defendants provided an exhibit showing the legal copies made by plaintiff between March 19, 2004 and October 29, 2004.  Exhibits were also introduced showing plaintiff was allowed use of the law library on July 13, 16, 19, and 23, 2004; August 20, 2004; and October 29, 2004.

---

[4] The memo further noted that plaintiff had three disciplinary charges in the last five months and that, if he were to establish a discipline-free record, he would be eligible to move to the positive side of the unit where inmates were allowed outside recreation on a regular basis.

Prison officials may restrict use of the law library by inmates on segregation to instances when they have legal deadlines. *Harrington v. Holshouser*, 741 F.2d 66, 68-69 (4th Cir. 1984). The plaintiff has made no showing that he was prejudiced by not being allowed additional access to the law library. This argument also lacks merit.

For the reasons stated above, the plaintiff's constitutional claims lack merit. Likewise, the defendants have also asserted that they are entitled to summary judgment on grounds of qualified immunity and under the Eleventh Amendment.

### **Qualified Immunity**

Defendants contend that they are entitled to qualified immunity for the claims brought against them in their individual capacities. Thus, defendants argue that they have not knowingly violated any of the plaintiff's constitutional rights and are entitled to qualified immunity pursuant to *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). Defendants argue that the acts complained of by plaintiff are discretionary acts which are protected by the doctrine of qualified immunity as each defendant was acting in his/her capability as an official of the State of South Carolina at all times relevant to this suit.

When a person is sued in his individual capacity, the Court may consider whether that person is entitled to immunity from suit. Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it. *Gomez v. Toldeo*, 446 U.S. 635, 640-41 (1980); *Tanner v. Hardy*, 764 F.2d 1024, 1027 (4th Cir. 1985). Once asserted, however, the court should carefully consider whether the person is entitled to either absolute immunity (judicial and quasi-judicial, legislative) or qualified immunity. *Harlow*, 457 U.S. at 807. Once raised, immunity is a threshold issue, which should be addressed early in the action because if it can be shown to be a valid defense, the defendant is entitled to dismissal or summary judgment. *Siegert v. Gilley*, 500 U.S.

226, 331 (1991). For that reason, the issue of immunity should be addressed before discovery is allowed. *Id*.

The Supreme Court in *Harlow* established the standard which the court is to follow in determining whether a defendant is protected by this immunity: "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. As discussed above, the plaintiff fails to shows that the defendants acted with deliberate indifference and a reasonable corrections officer would not have understood there was a violation of a clearly established right. Therefore, defendant and its employees are entitled to qualified immunity in their individual capacities.

For the reasons stated above, the Court finds that the objections in this regard are without merit and are overruled.

### Eleventh Amendment

If the plaintiff's complaint is construed as a suit against state officials and employees acting in their official capacities, the defendants are also protected by Eleventh Amendment immunity. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66-71 (1989). The Supreme Court has stated:

> Section 1983 provides a forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity.

*Id*. at 66.

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . As such, it is not different from a suit against the

State itself . . . ." *Id*. at 71 (citations omitted).  The plaintiff appears to have only sued the defendants in their individual capacities.  However, to the extent this action could be construed as having been brought against the defendants in their official capacities, this Court grants summary judgment in their favor.

## Conclusion

After a review of the case law and record before it, the Court adopts the Report and Recommendation of the Magistrate Judge, incorporates it herein, and overrules plaintiff's objections. For the reasons stated therein and in this Order, defendants' motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED.**

s/ R. Bryan Harwell  
R. Bryan Harwell  
United States District Judge

December 30, 2005